Steven F. BRIGHT, Steven F. Bright, P.C., Crysta Entertainment, N.V., and Graham, Bright & Smith, P.C., Appellants,

v.

Howard ADDISON, Charles B. Lowe, and Questcom, Inc. f/k/a Quest Wireless Communications, Inc., Appellees.

No. 05–04–00170–CV.

Court of Appeals of Texas, Dallas.

Aug. 3, 2005.

Rehearing Overruled Sept. 28, 2005.

**594**

R. Spencer Shytles, Gary E. Smith, Graham, Bright & Smith P.C., G. Leroy Street, Street & Rudy, LLC, Dallas, for Appellants.

Edward P. Perrin, Jr., C. Christian Frederiksen, Jr., Hallett & Perrin, P.C., Dallas, for Appellees.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

After a trial before the court, the trial judge found appellants had usurped appellees' opportunity to manage a casino in Aruba. Steven F. Bright, Steven F. Bright, P.C., Crysta Entertainment, N.V., and Graham, Bright & Smith, P.C. appeal the trial court's judgment awarding Howard Addison, Charles B. Lowe, and Quest-

com, Inc. f/k/a Quest Wireless Communications, Inc. damages for breach of fiduciary duty, interference with prospective business relations, usurpation of business opportunity, and fraud. Bright, Steven F. Bright, P.C., and Crysta, in forty-four issues, urge reversal of the trial court's judgment. In nine issues, Graham, Bright & Smith, P.C. also urges reversal of the trial court's judgment. We affirm.

## BACKGROUND

Appellees Addison, Lowe, and Quest-Com sued appellants for usurping a business opportunity to manage a casino in Aruba. Appellant Bright is an attorney who practiced law as a member or shareholder of appellant professional corporations Steven F. Bright, P.C. and Graham, Bright & Smith, P.C. Appellant Crysta Entertainment N.V. is an Aruban corporation set up by Bright through which to manage the casino. Bright, Steven F. Bright, P.C., and Crysta Entertainment N.V. filed a joint brief on appeal and will be referred to as the Bright appellants. Graham, Bright & Smith, P.C. filed a separate brief on appeal and will be referred to as GB & S. The parties dispute most of the facts material to their claims. Because many of appellants' issues challenge the sufficiency of the evidence, we will not summarize facts here but will review the evidence relevant to particular issues as we address them.

## STANDARDS OF REVIEW

■ The Bright appellants raise issues challenging whether the evidence adduced at trial supports the trial judge's findings. A party who challenges the legal sufficiency of the evidence to support an issue upon which he did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Luce v. Interstate Adjusters, Inc.,* 26 S.W.3d 561, 566 (Tex. App.-Dallas 2000, no pet.) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983)). When reviewing a "no evidence" point, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.,2005).

■ A trial judge's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996)(per curiam). When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Dallas County v. Holmes,* 62 S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.) (citing *Croucher,* 660 S.W.2d at 58). In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding, and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)(per curiam).

■ In making this review, we are not a fact finder. Thus, we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Holmes,* 62 S.W.3d at 329; *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Barnett v. Coppell North Texas Court,*

*Ltd.*, 123 S.W.3d 804, 813–14 (Tex.App.-Dallas 2003, pet. denied).

 Appellants also challenge the constructive trust imposed and the declaratory judgment entered by the trial judge, as well as the admission of expert testimony. We review these rulings for abuse of discretion. *See Medford v. Medford,* 68 S.W.3d 242, 249 (Tex.App.-Fort Worth 2002, no pet.)(whether constructive trust should be imposed is within discretion of trial court); *Ter–Vartanyan v. R & R Freight, Inc.,* 111 S.W.3d 779, 781 (Tex. App.-Dallas 2003, pet. denied) (evidentiary rulings, including rulings on expert testimony, reviewed for abuse of discretion); *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 468 (Tex.1995)(trial court has discretion to enter declaratory judgment as long as it will serve useful purpose or will terminate the controversy between the parties). The trial court abuses its discretion only if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

Finally, appellants challenge the award of punitive damages. We will discuss the relevant standards of review when we address the issues relating to the award of punitive damages.

### Breach of Fiduciary Duty

 In their first three issues, the Bright appellants challenge the legal and factual sufficiency of the evidence supporting the trial judge's findings that they owed fiduciary duties to appellees, breached those duties, or failed to act in good faith in acquiring rights in the Aruba casino. Appellees urge Bright was their lawyer, and as their lawyer, owed them fiduciary duties. Bright contends he was their business associate but never their attorney.

 The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for the client. *Honeycutt v. Billingsley,* 992 S.W.2d 570, 581 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The relationship may be expressly created through a contract or it may be implied from the actions of the parties. *Honeycutt,* 992 S.W.2d at 581. To determine whether there was a meeting of the minds, a fact finder uses an objective standard examining what the parties said and did and does not look at their subjective states of mind. *Roberts v. Healey,* 991 S.W.2d 873, 880 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

There was evidence Bright acted both as appellees' attorney and as their business associate. Bright points to the evidence showing he oversaw construction at the casinos, purchased furniture, bought equipment, met with contractors, and undertook other activities relating to the operation of the casinos. Appellees point to evidence Bright incorporated corporations, conducted due diligence, negotiated contracts, worked on licensing issues, advised on regulatory issues, and other activities related to the practice of law.

All parties point to Bright's billing as supporting their arguments. Bright argues his invoices were consistent with the "consulting fees" agreed to in a non-binding term sheet signed by the parties to invest in and operate a casino in the Costa Caribe Hotel in Juan Dolio, Dominican Republic, and did not represent legal work he undertook for appellees. Appellees point to the designation on the bills for "professional services," and argue the only "professional services" Bright could offer were legal services. The bills were on Graham, Bright & Smith, P.C. letterhead. Appellees' funds were deposited into Gra-

ham, Bright & Smith P.C.'s client trust account.

Although Bright maintains most of his activities on Addison and Lowe's behalf were not legal services, he did admit at trial that some of the work he performed for Addison and Lowe was legal work; he was uniquely qualified to perform certain work for Addison and Lowe because he was a lawyer; and his consulting fee did cover some activity he would describe as normal legal work. He admitted he advised Addison and Lowe regarding the attorney-client privilege. Lowe and Addison both testified they retained Bright as their lawyer. After working with Bright for several months, Lowe sent Bright an engagement letter, based on Bright's advice about preserving the attorney-client privilege. The letter was written on behalf of all appellees. Bright did not respond to the letter or advise appellees they were mistaken about the nature of the relationship between them. Although the term sheet provided the parties would enter into a shareholders' agreement, agreement on the terms was never reached and no written agreement was ever signed creating a contractual relationship among the parties as joint shareholders. After a review of the record, we hold there was legally and factually sufficient evidence to support the trial judge's finding of an attorney-client relationship between Bright and appellees.

The relationship existing between attorney and client is characterized as "highly fiduciary," and requires proof of "perfect fairness" on the part of the attorney. *See Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 22 (Tex.App.-Tyler 2000, pet. denied) (citing *Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex.1964)). As appellees' attorney, Bright owed them the duty of full disclosure. *Chappell,* 37 S.W.3d at 22. As noted in *Chappell,* "[a]

fiduciary has much more than the traditional obligation not to make any material misrepresentations; he has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes." *Chappell,* 37 S.W.3d at 22 (citing *Montgomery v. Kennedy,* 669 S.W.2d 309, 312–14 (Tex.1984)). The breach of the duty of full disclosure by a fiduciary is tantamount to fraudulent concealment. *Chappell,* 37 S.W.3d at 22 (citing *Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988)). The parties agree that Bright did not tell appellees about the availability of the Aruba opportunity until after he had begun managing the Aruba casino himself and appellees learned about it from another source. Appellees contend Bright was, or should have been, acting on their behalf when he undertook to manage the Aruba casino, while Bright contends appellees decided not to invest in any new projects, and stopped paying Bright's invoices, months before the opportunity to manage the Aruba casino became available. We hold there was legally and factually sufficient evidence to support the trial judge's finding Bright breached fiduciary duties to appellees.

In their thirteenth issue, the Bright appellants challenge the legal and factual sufficiency of the trial court's finding that Bright usurped a business opportunity of appellees. The Bright appellants argue this finding is based upon the same factual and legal elements as appellees' claim for breach of fiduciary duty, and rely on their arguments and authorities relating to fiduciary duty in support of their thirteenth issue. We therefore overrule the Bright appellants' thirteenth issue as well as their first, second, and third issues.

NEGLIGENCE

In their fourth and fifth issues, the Bright appellants challenge the legal

and factual sufficiency of the evidence to support the trial judge's findings that Bright owed and breached a duty of care to appellees. In a negligence action, an attorney is held to the standard of care that would be exercised by a reasonably prudent attorney in the same or similar circumstances. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex.1989); *Rodgers v. Weatherspoon*, 141 S.W.3d 342, 345 (Tex. App.-Dallas 2004, no pet.) As discussed above, there was legally and factually sufficient evidence to support the trial judge's findings Bright, as an attorney, owed a fiduciary duty to appellants, and breached that duty. We therefore overrule the Bright appellants' fourth and fifth issues.

INTERFERENCE WITH PROSPECTIVE CONTRACT

 The Bright appellants challenge the legal and factual sufficiency of the evidence to support the trial judge's findings regarding Bright's intentional interference with appellees' prospective business relationship. Appellees contend the Aruba opportunity was part of a three-casino "package deal" with the Allegro Corporation. Bright contends the Aruba opportunity was presented separately from the deals for the other two casinos. After *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex.2001), courts have adopted the following elements to determine whether interference with contractual relations has occurred: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant acted with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *COC Services,* *Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex.App.-Dallas 2004, pet. filed).

Appellees presented evidence the Allegro Resorts Corporation sent out a request seeking proposals for the management of three casinos it or its subsidiaries owned. The three casinos were Jack Tar Village, located in Puerto Plata, Dominican Republic, the Turks & Caicos casino, located on the Turks & Caicos Islands, and the Aruba Palm Beach casino, located in Aruba. Both Allegro's President, Benny Guevara, and its general counsel, Kent Richey, testified regarding the request for proposal. These witnesses testified to Allegro's desire to have a single group managing all three casinos, both to "simplify matters" for Allegro and to provide incentive to the management group "that if they lose money in one casino but they make it up in another casino, they'll still be willing to continue to operate with us." Minutes from meetings of Allegro's board of directors confirmed Guevara's and Richey's testimony. Bids "had been obtained from various casino operators to operate the Corporation's casinos in Puerto Plata, Turks & Caicos and Aruba." A board member "recommended a group led by Steve Bright, a Texas lawyer, and including Bill Martindale (formerly of Global Casinos), Charles Lowe and Howard Addison."

Allegro entered into agreements with appellees for the Jack Tar and Turks & Caicos casinos. Richey testified he used the same management agreement for all three casinos, sending them to Bright for signature. Richey also testified that when he sent the agreement for the Aruba casino to Bright, Bright told him Addison and Lowe were not interested in investing in it because they were losing money in the other two casinos. Bright told Richey he would take the deal for himself and would let Addison and Lowe in on the deal later

if they wanted to participate. Richey testified if he had known Addison and Lowe had not been advised of the opportunity, he would have contacted them to discuss whether they wanted to participate.

Addison and Lowe both testified they were not made aware of the opportunity to manage the Aruba casino until after Bright had begun managing it. Lowe received an e-mail from Richey asking for monthly profit and loss reports for all three casinos, including Aruba. Lowe and Addison then met with Richey and learned Bright had been operating the Aruba casino for three months. Bright admitted he did not tell Addison and Lowe about the availability of the opportunity when it arose and before he took the opportunity for himself; he is "absolutely sure that I did not" tell Lowe he was managing the Aruba casino because "it's none of their business." Lowe testified he continued to meet with Bright in the time period between Bright's signing of the Aruba contract and Lowe's learning of it, and further testified Bright continued to tell him the Aruba casino was unavailable.

Bright points to evidence Guevara and Richey were not absolutely sure the Aruba casino was included in the request for proposal; the request for proposal was not included in the evidence at trial; and the Aruba casino would not have been included in a package to provide incentives for profit when the other casinos were losing money, because at the time the projections for the other two casinos were also showing a profit. He argues Lowe and Addison were ambivalent about the Aruba opportunity and had terminated their relationship with Bright by the time it arose. The trial judge's findings of interference, based on appellees' evidence there was a reasonable probability Allegro would have entered into a third contract with appellees absent Bright's fraud and breach of fiduciary

duty, is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 709 S.W.2d at 176. We hold there was legally and factually sufficient evidence to support the trial judge's findings of Bright's intentional interference with appellees' prospective business relationship with Allegro with respect to the Aruba casino, and overrule the Bright appellants' sixth, seventh, and eighth issues.

### FRAUD

 The Bright appellants next challenge the legal and factual sufficiency of the trial judge's findings relating to appellees' claims of fraud. As noted above, Bright concealed from appellees the availability of the opportunity to invest in and manage the Aruba casino, and owed a fiduciary duty to Addison and Lowe to disclose this information. *See Chappell,* 37 S.W.3d at 22. This failure to disclose constitutes fraud. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex.1997) (fraud by non-disclosure is subcategory of fraud because, where a party has a duty to disclose, non-disclosure may be as misleading as positive misrepresentation of facts).

Bright argues there is insufficient evidence of appellees' reliance or that his fraud was the proximate cause of damage to appellees. Lowe testified he continued to inquire as to the availability of the Aruba casino and was told by Bright there were still issues to be resolved as to licensing. Lowe also testified he felt he had made a commitment to the funding of all three casinos and never told Bright he was not interested in investing in the Aruba casino. He testified he had sufficient cash on hand to satisfy any commitment to invest in the Aruba casino. He also testified that at Richey's request, he and Addison made efforts to negotiate with Bright to

become a part of the Aruba investment after they learned Bright had begun to manage the casino. Allegro terminated the contract with Crysta, however, because of Crysta's failure to comply with the contract's terms regarding the casino's bank accounts. Appellees lost the opportunity to invest in the Aruba casino at the time Allegro made it available. Appellees presented evidence regarding the damage suffered from the loss of the opportunity to invest in and manage the Aruba casino, discussed in detail below. We overrule the Bright appellants' issues nine through twelve.

In issues seventeen through twenty-two, the Bright appellants urge there was legally and factually insufficient evidence to support a finding of a causal connection between their conduct and appellees' damages. We hold there was legally and factually sufficient evidence to support the trial judge's findings and conclusions that Bright's conduct was the proximate cause of damage to appellees, for the reasons discussed under Bright's challenges to the various causes of action. We overrule the Bright appellants' seventeenth, eighteenth, nineteenth, twentieth, twenty-first, and twenty-second issues.

## CONSTRUCTIVE TRUST

 In their fourteenth, fifteenth, and sixteenth issues, the Bright appellants challenge the constructive trust imposed by the trial court. The judgment imposes a constructive trust in favor of Addison and Lowe on Crysta and all its assets. The Bright appellants contend there is no dispute the money used to incorporate Crysta, to purchase the management contract for the Aruba casino, and to open and operate the Aruba casino did not come from appellees. A constructive trust, appellants argue, can only be imposed on wrongfully acquired property.

Appellees contend the constructive trust was proper because Crysta's only function was to obtain the contract to manage the Aruba casino and operate it. Crysta holds contractual rights and entitlements, appellees argue, that rightfully belong to Addison and Lowe. Because the trial judge found the casino opportunity and the management agreement were the property of Addison and Lowe, appellees argue, the constructive trust was proper.

 Actual fraud as well as breach of a confidential relationship justifies the imposition of a constructive trust. *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974). As noted by the supreme court in *Meadows*:

Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another. Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of the relief granted.

*Meadows*, 516 S.W.2d at 131 (citations omitted). Whether a constructive trust should be imposed is within the discretion of the trial court. *Medford*, 68 S.W.3d at 249.

We have held there is legally and factually sufficient evidence to support the trial judge's findings of breach of fiduciary duty and fraud. The trial judge also found the casino management agreement between Crysta and Allegro was the property of Addison and Lowe. The evidence showed Bright formed Crysta for the purpose of

entering into the contract with Allegro to manage the Aruba casino. Allegro subsequently terminated the contract, and Crysta has filed three lawsuits in Aruba and Florida to enforce its rights under the contract. Crysta holds rights and assets of Addison's and Lowe's. Even though Addison's and Lowe's funds were not used for the initial capital for Crysta, Crysta "holds funds which in equity and good conscience should belong to another." *See Meadows*, 516 S.W.2d at 131. The trial court's judgment imposes the constructive trust on specific, identifiable property. *See Meadows*, 516 S.W.2d at 129 (constructive trust on unidentifiable cash proceeds inappropriate); *see also Omohundro v. Matthews*, 161 Tex. 367, 380, 341 S.W.2d 401, 410 (Tex.1960) (constructive trust appropriate where three parties agreed to share equally in royalty interest even though no evidence any of three put money into venture). The trial judge did not abuse his discretion in imposing the constructive trust.

The Bright appellants also contend the constructive trust acts as a double recovery. The trial judge, however, entered an amended judgment providing any value recovered by appellees through the constructive trust shall be credited to the amounts owed on the judgment for past and future lost profits. We overrule issues fourteen, fifteen, and sixteen.

## EXPERT TESTIMONY

The Bright appellants challenge appellees' expert testimony on lost profits on several grounds. In their twenty-third through thirty-first issues, the Bright appellants allege appellees' expert witness was not qualified; the expert's methodology and opinions were unreliable; lost profits were not proven with a reasonable degree of certainty; and the evidence was legally and factually insufficient to support the trial court's award of damages.

■■■ The Bright appellants first argue appellees' expert Rodney Sowards was not qualified to testify as an expert on lost profits from the operation of a casino in Aruba. The Bright appellants contend Sowards had very limited experience with casinos and tourism, and lacked the appropriate experience and training in international transactions. Citing *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713 (Tex.1998), the Bright appellants argue Sowards was not an expert on the subject of his testimony in this case, and thus was not qualified to offer an expert opinion on lost profits from the Aruban casino.

Appellees' evidence showed Sowards is a certified public accountant licensed in Texas. He testified he has performed hundreds of lost profits evaluations in the course of his sixteen-year career. He was retained by the Resolution Trust Company to evaluate two casinos in Arizona and New Mexico, analyzing their historical financial performance, budgets, cash flow, and prospects for future profitability. He also evaluated a Las Vegas casino's plan of reorganization in bankruptcy and prospective cash flow. Further, he reviewed the operations of a casino in Puerto Rico after a manager was accused of improprieties. Sowards testified he had experience in a number of international matters, including analyses of businesses in the Caribbean. Sowards emphasized, however, that the analyses he undertook to determine lost profits in this case were not specific to casinos or international businesses; they were generally accepted in the field of accounting regardless of industry. He testified he used standard, widely-accepted accounting methodologies in reaching his conclusions regarding lost profits, determining revenue and expenses for a particular time period to attempt to "put the

injured party in the same financial position they would have been but for the alleged wrongdoing."

■ In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex.2001) (quoting *Gammill*, 972 S.W.2d at 719). There were at least two pretrial hearings on the lost profits evidence proffered by appellees. The trial judge and an associate judge both considered the Bright appellants' objections to Sowards and other experts designated by appellees to testify as to lost profits. Appellees provided additional evidence for the trial judge's consideration after he voiced concerns about the qualifications of appellees' experts and the reliability of their testimony. Although the Bright appellants contend Sowards's qualifications and experience were inadequate, we conclude the trial judge did not abuse his discretion in finding Sowards qualified to give his opinion regarding lost profits from the Aruban casino.

■ The Bright appellants also challenge the reliability of Sowards's testimony. All expert testimony must be based on a reliable foundation to be admissible. *See Gammill*, 972 S.W.2d at 726 (expert testimony should be shown to be reliable before it is admitted). As noted in *Helena Chemical Co.*, the trial court "should ensure that the opinion comports with applicable professional standards outside the courtroom and that it will have a reliable basis in the knowledge and experience of the discipline." *Helena Chem. Co.*, 47 S.W.3d at 499 (quoting *Gammill*, 972 S.W.2d at 725–26). The Bright appellants specifically challenge Sowards's use of a correlation between hotel occupancy percentages and a casino's net revenue to determine expected profits. Sowards opined that as a hotel's occupancy increased, the net revenue of the casino associated with the hotel would also increase. The Bright appellants point to several examples in Sowards's analysis in which hotel occupancy percentages were similar but net revenues were different; in one instance revenue was more than double despite similar occupancy percentages. Sowards acknowledged these "outlier" results but testified his figures taken from actual operation of appellees' hotels and casinos in the Caribbean for over a year demonstrated the correlation nonetheless. Sowards did not disregard these outlier figures; they were included and considered in his analysis with all of the other data. Sowards explained if there were many outliers of large magnitude, there would be no correlation shown by the analysis. Here, however, a correlation was shown despite the outliers.

The Bright appellants further contend Sowards's opinions do not meet the standards set forth by the Texas Supreme Court for recovery of lost profits; that is, appellees have not established their loss "by competent evidence with reasonable certainty." *See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994) (quoting *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098–99 (1938)). The Bright appellants complain the casino business is too uncertain and dependent upon local government regulation of gambling, location of the casino, length of stay, and other factors to assure a reasonably certain determination of lost profits. The Bright appellants complain Sowards took none of these factors into account in his determination of lost profits. Sowards, however, used actual data in his calculations, including twenty months of actual net revenue data for the Aruba casino itself as well as

thirty-nine months of actual hotel occupancy rates for Aruba. He also used thirty-nine months of actual data from appellees' other three casinos, Costa Caribe, Jack Tar, and Turks & Caicos, including occupancy rates and net revenue. As the trial judge noted, reliance on actual data from an existing business would reflect or take into account all of the factors noted by the Bright appellants. The effects of government regulations, location, occupancy rates, and other factors would be reflected in the actual figures used by Sowards. The trial judge did not abuse his discretion in finding appellees had established lost profits by competent evidence with reasonable certainty. *See Tex. Instruments, Inc.,* 877 S.W.2d at 279.

Finally, the Bright appellants urge the evidence is legally and factually insufficient to support the trial court's award of actual damages. Their arguments are based upon Sowards's lack of qualifications and the unreliability of his analysis. We have rejected these arguments, and hold the trial judge did not abuse his discretion in admitting Sowards's testimony. Sowards's analysis of lost profits damages in the range of $3.7 to $4.2 million was admissible, and there was legally and factually sufficient evidence to support the trial judge's finding appellees suffered actual damages in the amount of $3,656,395.00. We overrule the Bright appellants' issues 23 through 31.

## EXEMPLARY DAMAGES

In their thirty-second through thirty-sixth issues, the Bright appellants challenge the trial judge's award of exemplary damages. They challenge the legal and factual sufficiency of the evidence supporting the trial judge's findings of fraud or malice and the amount of the award. They also challenge the imposition of exemplary damages on Crysta and Steven F.

Bright, P.C. for the acts of Bright. They challenge the constitutionality of the award and argue it exceeds the statutory cap.

 We first consider the Bright appellants' challenge to the punitive damages award on federal due process grounds. Even if an assessment of punitive damages is not deemed excessive under governing state law, it may violate a party's substantive due process right to protection from "grossly excessive" punitive damages awards. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 45 (Tex.1998) (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). *BMW* establishes three "guideposts" for determining whether a punitive damages award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between actual and punitive damages; and (3) a comparison of the punitive damages awarded and other civil or criminal penalties that could be imposed for similar misconduct. *Malone,* 972 S.W.2d at 45 (citing *BMW,* 517 U.S. at 574–75, 116 S.Ct. 1589).

 Under the first guidepost, which the Supreme Court has described as the most important, we should consider whether the harm caused was physical as opposed to economic; the tortious conduct evinced a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, deceit, or mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The Bright appellants argue "at most" only the last factor weighs in favor of the award. We agree the harm suffered by appellees was economic and did not involve their health, safety, or financial

vulnerability. Bright's conduct, however, was an intentional breach of his fiduciary duty to his clients. He testified he had no intention of disclosing to appellees he had taken the opportunity to manage the Aruba casino, and there was evidence he affirmatively misrepresented the status of the opportunity to appellees after he usurped it. Although Bright had a duty of "perfect fairness" to appellees, including an "affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes," *see* *Chappell*, 37 S.W.3d at 22, he testified at trial the Aruba opportunity was "none of their business." The evidence showed Bright acted with intentional malice, trickery, and deceit rather than mere accident. *See Campbell*, 538 U.S. at 419, 123 S.Ct. 1513.

As to the second guidepost, the Supreme Court noted in *Campbell* there was "a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish." *Campbell*, 538 U.S. at 425, 123 S.Ct. 1513. The trial court awarded $3,656,395.00 in compensatory damages, and punitive damages in the amount of $1,500,000.00 against Bright, $1,500,000.00 against Crysta, $1,500,000.00 against Steven F. Bright, P.C., and $500,000.00 against GB & S. The ratio of actual to punitive damages does not indicate the punitive damages awards were excessive.

As to comparable penalties, the Bright appellants argue the statutory damages cap is $750,000, so that Bright did not have "reasonable notice ... his conduct could result in $4,500,000 in punitive damages." The statute, however, allows exemplary damages in the amount of two times the amount of economic damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.008(b)(1)(A) (Vernon Supp.2004–05).

The trial judge's award was within this limit.

Regarding the sufficiency of the evidence to support the punitive damages award, appellees were required to prove by clear and convincing evidence that the harm they suffered resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem.Code Ann. § 41.003(a) (Vernon Supp.2004–05). In reviewing the evidence for legal sufficiency under the clear and convincing standard, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that its finding was true. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex.2004); *see also Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 483 (Tex.App.-Fort Worth 2004, no pet.), *citing In re J.F.C.*, 96 S.W.3d 256, 265 (Tex.2002). We must review all the evidence in the light most favorable to the finding and judgment. *Garza*, 164 S.W.3d at 623–25; *Citizens Nat'l Bank*, 142 S.W.3d at 483. We must also disregard all evidence a reasonable factfinder could have disbelieved, but we must consider undisputed evidence even if it does not support the finding. *Garza*, 164 S.W.3d at 623–25; *Citizens Nat'l Bank*, 142 S.W.3d at 483. In a factual sufficiency review, we must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Citizens Nat'l Bank*, 142 S.W.3d at 483.

The factors set forth in *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981), provide the framework for our review. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex.1994) (when conducting factual sufficiency review of punitive damage award, court of appeals must detail relevant evidence and explain why evidence does or does not support

award in light of *Kraus* factors); *see also Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex.2004)(per curiam) (*Kraus* factors have value in determining reasonableness of exemplary damage award, but not substitute for threshold inquiry whether exemplary damages should be awarded in first place). The *Kraus* factors include: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of the culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety." *Kraus*, 616 S.W.2d at 910. As noted above, appellees introduced evidence Bright intentionally breached his fiduciary duty to them, taking advantage of an opportunity that belonged to his clients and deliberately failing to disclose he had taken the opportunity for himself. Especially in light of the "highly fiduciary" relationship between attorney and client, Bright's intentional fraud offends a public sense of justice and propriety. *See Chappell*, 37 S.W.3d at 22. There was no evidence of Bright's remorse, a relevant factor in considering the situation and sensibilities of the parties. *See Brosseau v. Ranzau*, 81 S.W.3d 381, 396–97 (Tex.App.-Beaumont 2002, pet. denied). The trial judge's award of punitive damages meets the criteria set forth in *Kraus*. *See Kraus*, 616 S.W.2d at 910.

▇ In issue thirty-six, the Bright appellants argue the punitive damages awards against them should be aggregated for determining whether the statutory cap on punitive damages set forth in Chapter 41 of the Texas Civil Practice & Remedies Code has been exceeded. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.008 (Vernon Supp.2004–05). In issue thirty-four, they argue the evidence is insufficient to support exemplary damage awards against

Crysta and Steven F. Bright, P.C. for the acts of an agent. They make no further argument and cite no authority for these propositions and have therefore waived these issues. *See* Tex.R.App. P. 38.1(h) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record); *see also Brown v. Brown*, 145 S.W.3d 745, 754 (Tex.App.-Dallas 2004, pet. denied) (issues not discussed in brief were waived on appeal).

We overrule the Bright appellants' issues thirty-two through thirty-six.

### DECLARATORY RELIEF AND ATTORNEYS' FEES

▇ The Bright appellants next challenge the award of declaratory relief in the trial court's judgment, and further challenge the award of attorneys' fees based upon the declaratory relief. In the final judgment, the trial judge entered a declaratory judgment regarding the parties' rights in certain corporate entities formed by Bright to operate the casinos in which appellees had an interest. These entities are Envest, Ltd., an offshore holding company; Coral Coast Entertainment, S.A., a Dominican company; Costal, S.A., a Dominican company, and Calfry, Ltd., a Turks & Caicos company. Coral Coast was to operate the Costa Caribe casino located in Jan Dolio, Dominican Republic. Costal was to operate the Jack Tar Village casino located in Puerto Plata, Dominican Republic. Calfry was to operate the Turks & Caicos casino, located on the Turks & Caicos Islands. Each entity was a party to a written contract or lease to operate a specific casino. Each of the three documents was signed by Bright on behalf of Coral Coast, Costal, or Calfry. Coral Coast, Costal, and Calfry are all subsidiaries of Envest. Appellees were shareholders of the companies and invested funds in them. Appellees sought and

obtained declaratory judgments that appellants had no rights or interest in Envest, Coral Coast, Costal, or Calfry or authority to act on behalf of those entities. The declaratory judgment also addresses rights in lawsuits pending in Florida and Aruba between Crysta and the current and former owners of the Aruba casino.

The purpose of the Uniform Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity about rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997). A trial court may construe a contract in a declaratory judgment suit either before or after a breach occurs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 1997); *see also Hasty, Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 499 (Tex.App.-Dallas 1995, writ denied). A trial court has discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *See Bonham State Bank,* 907 S.W.2d at 468.

The Bright appellants contend the declaratory relief sought by appellees was "merely incidental" to their other claims, and was not appropriate because appellees' causes of action were mature and enforceable in a pending suit that involved the same parties and the same issues. Appellees' causes of action, however, arose out of the alleged usurping of the business opportunity presented by the Aruban casino, not out of any breaches of the agreements relating to the other casinos. The declaratory judgments serve the purpose of clarifying the rights of the parties under the agreements relating to the other casinos. *See J.E.M. v. Fid. & Cas. Co. of New York,* 928 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (purpose of declaratory judgment is to obtain clarification of one's rights). They act to fully terminate all controversies between the parties. TEX. CIV. PRAC. & REM.CODE ANN. § 37.008 (Vernon 1997) (court may refuse to render declaratory judgment if it does not terminate uncertainty or controversy). We hold the trial judge did not abuse his discretion in entering the declaratory judgments. *See Bonham State Bank,* 907 S.W.2d at 468.

The Texas Uniform Declaratory Judgments Act allows the trial court to award reasonable and necessary attorneys' fees and costs as are equitable and just. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The decision to grant or deny attorneys' fees and costs is within the trial court's sound discretion. *Hasty, Inc.,* 908 S.W.2d at 502. We broadly construe the trial court's discretion to award attorneys' fees and costs in a declaratory judgment action. *Hasty, Inc.,* 908 S.W.2d at 502.

The Bright appellants argue that even if the declaratory judgment was proper, the trial judge abused his discretion by awarding attorneys' fees because there was no evidence the fees were reasonable and necessary. Pursuant to the parties' stipulation, appellees submitted the affidavit of Edward P. Perrin, Jr. to support their claim for attorneys' fees. The affidavit offers evidence relevant to the factors set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997), for determining whether attorneys' fees are reasonable and necessary. We hold the trial judge did not abuse his discretion in awarding attorneys' fees.

We overrule the Bright appellants' issues 37 through 44.

### ISSUES PRESENTED BY GB & S LAW FIRM

GB & S raises nine issues in its separate appeal. Eight of the issues challenge the legal and factual sufficiency of the evi-

dence to support the trial judge's findings and conclusions as to GB & S on issues of proximate cause, vicarious liability, negligence, fiduciary relationship, malice and fraud, exemplary damages, and attorney's fees. The ninth issue complains of a potential "double recovery."

■ We overrule GB & S's issues one through seven because Bright's acts are deemed to be those of GB & S. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999) ("When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself."); *see also Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 619 (Tex.App.-Waco 2000, pet. denied) (corporation may be liable for exemplary damages if it acts maliciously through the actions of corporate officer). It is undisputed Bright is a vice-principal of GB & S. Bright formed the firm with Rick J.W. Graham and is an officer and director of GB & S.

■ In addition, if a servant's act is closely connected with his authorized duties, a master is vicariously liable even where the servant's act is intentional and the master did not specifically authorize it. *GTE Southwest,* 998 S.W.2d at 617–18. The trial judge heard evidence Bright's only professional license was his law license; GB & S was incorporated for the purpose of the practice of law; Bright was a vice-principal of GB & S; Bright used GB & S letterhead in providing services to appellees; appellees' funds were deposited in GB & S's trust account; and statements sent to appellees and paid by appellees for professional services bore GB & S's name. As noted above, Bright admitted at least some of the activities he undertook on appellees' behalf were legal work. For the Aruba casino, Bright engaged in similar work to create a corporation and enter into a management agreement as he had done on appellees' behalf on three prior occasions. There was sufficient evidence from which the trial judge could have found Bright was acting in the course and scope of his duties for GB & S in his dealings with appellees. "If the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be liable." *GTE Southwest,* 998 S.W.2d at 618; *see also G.T. Mgmt., Inc. v. Gonzalez,* 106 S.W.3d 880, 884 (Tex.App.-Dallas 2003, no pet.) (employer liable for act of employee, even if act contrary to express orders, if done within general authority as employee). Bright's actions occurred while he was carrying out his duties of rendering professional services to appellees. There is evidence to support the trial judge's findings regarding GB & S's liability to appellees.

Because the trial court's judgment may be upheld on theories of vicarious liability, we need not consider GB & S's arguments regarding its direct liability for negligence and the necessity of expert testimony on that issue. *See G.T. Mgmt., Inc.,* 106 S.W.3d at 885 (appeals court need not consider negligence theories where judgment could be upheld on theory of respondeat superior).

We overrule GB & S's issues one through seven. We have addressed the propriety of the attorneys' fees award and the issue of double recovery in our discussion of Bright's appeal. We overrule GB & S's eighth and ninth issues.

We affirm the trial court's judgment.