**GREENE'S PRESSURE TREATING & RENTALS, INC., and H. Rowe Greene Leasing Company, L.L.C., Appellants,**

v.

**FULBRIGHT & JAWORSKI, L.L.P., John Mings, Jack Vaughan, John Barrett, and David Tannenbaum, Appellees.**

No. 01–03–01084–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 2, 2005.

Guy E. Matthews, Kelly D. Stephens, The Matthews Firm, Houston, TX, for Appellants.

Joe W. Redden, Jr., John S. Adcock, Russell S. Post, Beck, Redden & Secrest, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

This is an appeal from a summary judgment granted to appellees, Fulbright & Jaworski, L.L.P., John Mings, Jack Vaughan, John Barrett, and David Tannenbaum (collectively "Fulbright"), in a case involving allegations of breach of fiduciary duty brought by appellants, Greene's Pressure Treating & Rentals, Inc., and H. Rowe Greene Leasing Company, L.L.C. (collectively "Greene"). In two issues, Greene contends that the trial court erred in granting Fulbright's motion for summary judgment as to Greene's breach of fiduciary duty claim because (1) Greene met its burden to show the duty element of its claim and (2) Fulbright failed to show that Greene's claims are barred by limitations, as alleged.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1991, United States Patent No. 5,027,842 ("the '842 patent") was issued to

Marvin Powers for his method of commissioning pipelines.[1] Powers assigned the patent to BJ Services Company ("BJS"). During the same period, Coulter Service Company ("Coulter") also developed a commissioning process ("the Coulter Process"). BJS initially claimed that the Coulter Process infringed on the '842 patent, but later abandoned its claim.

In 1992, Pipetronix acquired Coulter and the rights to the Coulter Process. BJS reappeared and threatened suit against Pipetronix for infringement on the '842 patent. In 1997, Pipetronix retained Fulbright to provide a legal opinion concerning whether the Coulter Process infringed on the '842 patent. Fulbright issued a confidential opinion letter that the Coulter Process did not infringe on the '842 patent.

In 1999, Pipeline Integrity International ("PII") acquired Pipetronix. PII used the Coulter Process. BJS initially threatened infringement action, but later abandoned its claim. Eventually, PII sold 95% of the original Pipetronix assets to General Electric ("GE") and the remaining 5% to Greene. Rights to the Coulter Process were included in the 5% to Greene.

Greene began using the Coulter Process. In 2000, BJS appeared again and asserted that such use constituted an infringement on the '842 patent. On November 22, 2000, Greene filed an action for declaratory judgment. On December 19, 2000, BJS, represented by Fulbright, filed an action against Greene, claiming infringement. Greene notified Fulbright that Fulbright's position in this suit (asserting infringement) appeared to conflict with Fulbright's position in its prior opinion letter (declaring non-infringement). Fulbright continued to represent BJS.

Greene filed a Motion to Disqualify Plaintiff's Counsel, which was later denied as moot due to ongoing settlement negotiations and, on a motion by BJS, the case was dismissed.

On May 1, 2003, Greene filed suit against Fulbright for malpractice, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act ("DTPA"), based on Fulbright's representation of BJS. Fulbright moved for summary judgment on the grounds that Fulbright owed no duty to Greene as a matter of law and that Greene was not a consumer under the DTPA. Fulbright attached to its motion, as evidence, Greene's original petition; the affidavit of Gunnar Kopp of Pipetronix, stating that less than 5 percent of Pipetronix's assets were sold to Greene; the affidavit of William R. Pakalka of Fulbright, stating that Greene has never sought or obtained legal services from Fulbright; the asset purchase agreement between PII, as successor in interest to Pipetronix; and Fulbright's non-infringement opinion letter. In response to the motion, Greene's evidence included the affidavit of Robert Vilyus, president of PII, stating that Greene purchased the Coulter Process from PII; and the affidavit of Eric Langlinais, president of Greene, stating that Greene's purchase of the Coulter Process was conditioned on the representation that it did not infringe on any patent.

On September 23, 2003, the trial court granted summary judgment in favor of Fulbright. Greene solely appeals the summary judgment as to its breach of fiduciary duty claim.

## ANALYSIS

In its first issue, Greene contends that the trial court erred in granting summary

---

1. "Commissioning" refers to purging a pipeline of its unwanted materials and preparing it for safe movement of petrochemicals.

judgment for Fulbright on the ground that Greene failed to meet its burden as to the duty element of breach of fiduciary duty claim. Greene contends that a fiduciary duty arose solely from an attorney-client relationship that was created between it and Fulbright by virtue of the transfer of the Coulter Process.

## Summary Judgment

### A. Standard of Review

We review a trial court's granting of a summary judgment de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994). A summary judgment under Rule of Civil Procedure 166a(c) is properly granted only when a movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt.,* 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut plaintiff's cause. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). In deciding whether there is a disputed material fact precluding summary judgment, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. TEX.R. CIV. P. 166a; *Nixon,* 690 S.W.2d at 549.

When, as here, a trial court does not state the basis for its decision in its summary judgment order, we must uphold the order if any of the theories advanced is meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

### B. Breach of Fiduciary Duty

 To recover on a breach of fiduciary duty claim, a plaintiff must first show that the defendant owed a fiduciary duty.

*Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 508 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (enumerating elements of breach of fiduciary duty claim as existence of fiduciary duty, breach of that duty, causation, and damages). An attorney has a fiduciary duty to his client when an attorney-client relationship is created. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988); *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 623 (Tex.App.-Houston [1st Dist.] 1993, writ denied). An attorney-client relationship arises when an attorney agrees to render professional services to a client. *Mellon Serv. Co. v. Touche Ross & Co.,* 17 S.W.3d 432, 437 (Tex.App.-Houston [1st Dist.] 2000, no pet.). This relationship may be expressly created by contract, or impliedly created through the parties' actions. *Id.*

Greene does not contend that it created a formal contractual relationship with Fulbright. Rather, Greene asserts that it has an attorney-client relationship with Fulbright solely by virtue of Greene's purchase of the Coulter Process. In 1997, Fulbright issued an opinion letter to its client, Pipetronix, stating that the Coulter Process did not infringe on the '842 patent. Greene contends that this opinion transferred with the sale of the Coulter Process asset from Pipetronix, through PII, to Greene. Greene maintains that it relied upon this letter when it purchased the Coulter Process from PII, and that such reliance created an attorney-client relationship between Fulbright and Greene. It is this alleged attorney-client relationship that provides the basis for Greene's assertion that Fulbright owed Greene a fiduciary duty. In essence, Greene asks this Court to find that, when it purchased the Coulter Process, it purchased the right to assert the former attorney-client relationship that once concerned the asset.

Whether a prior attorney-client relationship transfers depends on whether the transaction is characterized as a merger or merely as an acquisition of assets. *In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d 222, 227 (Tex.App.-Texarkana 2000, no pet.). An attorney-client relationship will transfer when a merger of two corporations takes place. *Id.* (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991 (1985)). In a merger, the successor organization stands in the shoes of prior management and continues the operations of the prior entity. *Id.* at 228. Generally, the rights and liabilities transfer, including a prior attorney-client relationship. *Id.* at 227–28; *see* TEX. BUS. CORP. ACT ANN. art. 5.06(A)(2) (Vernon Supp.2004–2005).

However, when a corporate transaction is merely a sale of assets, it is not a merger, and rights and liabilities do not transfer unless expressly assumed. *In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d at 227–28; TEX. BUS. CORP. ACT ANN. art. 5.10(B)(1) (Vernon 2003). A mere transfer of assets, with no attempt to continue the pre-existing operation, does not transfer the prior attorney-client relationship. *In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d at 227–28.

Here, the parties agree that the transaction between PII and Greene was not a merger. However, Greene contends that its purchase of the Coulter Process from PII constitutes a continuation of "an operating division or unit of a company" and because it was "that division or unit to which representation by the attorney applies, then the privileges between the attorney and the division of the company sold should transfer."

In examining the transfer between PII and Greene, the agreement, entitled "Agreement for Purchase of Assets," provides, in pertinent part, that PII intended to sell all of its "right, title and interest in and to [a list of assets, including technical and office equipment] and the rights relating thereto, including the goodwill associated with PIPETRONIX's prior use and operation of such equipment." PII states that the assets are purchased "as is" and that PII makes no warranties with respect to any of the assets. To the extent that PII had knowledge, it warranted that none of the assets nor the use of such assets violated or infringed on any patent. Moreover, the agreement states that the "Buyer confirms that it has made its own investigation" and has not relied on any statement or information furnished by the Seller unless specifically provided for in the agreement.

In addition, the evidence shows that the affidavit of Gunnar Kopp of Pipetronix states that less than five percent of Pipetronix's assets were sold to Greene. This evidence suggests that the parties did not contemplate that Greene would take over ongoing operations; rather, it appears that Greene was to use the assets it purchased in conducting its own operations. In addition, the affidavit of William R. Pakalka of Fulbright states that Greene never sought or obtained legal services from Fulbright and that Fulbright's non-infringement opinion letter, written to Pipetronix, was considered confidential and privileged by the parties.

Based on the language of the agreement, we conclude there is no support for Greene's contention that the transaction should be treated as anything more than a purchase of assets. In addition, we conclude that there is nothing in the agreement to support Greene's contention that PII had the intent or the ability to transfer the prior attorney-client relationship that existed between its predecessor, Pipetronix, and Fulbright. Further, the affidavit

evidence supports that a bare transfer of assets took place.

Greene's sole authority for its proposition that we treat its acquisition of the Coulter Process asset as something less than a merger, but something more than an acquisition of an asset, is *Graco Children's Products, Inc. v. Regalo Intern. L.L.C.,* 1999 WL 553478 (E.D.Pa.1999). Even if *Graco* could be construed as support, we are bound by precedent holding that the attorney-client relationship belongs to the management of a solvent corporation. *See Weintraub,* 471 U.S. at 348–49, 105 S.Ct. at 1991. The evidence shows that no merger took place between PII and Greene, and that PII remains a solvent corporation as a subsidiary of GE.

We conclude as a matter of law that no attorney-client relationship was created by virtue of Greene's purchase of the Coulter Process asset; thus, Fulbright owed no fiduciary duty to Greene on this basis. We conclude that Fulbright has carried its burden to show that Greene cannot show evidence of the duty element of its claim. Accordingly, the rendition of summary judgment on this ground was proper.

We overrule Greene's first issue.

### Limitations Defense

Having found that Greene's claim fails as a matter of law because Greene failed to meet its burden to show evidence of the duty element of its claim, we need not reach Greene's second issue concerning whether its claim was filed before the expiration of the limitations period.

### CONCLUSION

We affirm the trial court's judgment.