Affirmed and Memorandum Opinion filed November 13, 2007








Affirmed and Memorandum Opinion filed November 13, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01229-CV

____________

 

BRUCE R. LIVELY, Appellant

 

V.

 

J. RANDLE HENDERSON, 

INDIVIDUALLY AND AS A PARTNER IN HENDERSON &
HAMMON, L.L.P., Appellee

 

 

 



 

On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 03-61821

 



 

M E M O R
A N D U M  O P I N I O N








In this
breach of contract and fiduciary duty case, Bruce R. Lively contends the trial
court erred in granting summary judgment in favor of J. Randle Henderson individually
and as a partner in Henderson & Hammon, L.L.P. because Henderson failed to
establish, as a matter of law: (1) Bruce lacked standing; (2) the parties= Mutual Release negated Bruce=s claims; (3) Henderson did not owe
Bruce a fiduciary duty; and (4) Henderson was entitled to a no-evidence summary
judgment.  Bruce further asserts  the trial court erred in disposing of claims
raised in his second amended original petition upon which Henderson did not
move for summary judgment.  Because the terms of the release negate Bruce=s breach of contract claim and there
is no evidence that Henderson owed Bruce a fiduciary duty at the time of any
alleged breach, we affirm.

I. Factual and Procedural Background

When the
events giving rise to this lawsuit occurred, Bruce was the sole shareholder of
Lively Energy & Development Corp. (Ledco) and Harry Lively, Bruce=s father, was the sole shareholder of
Lively Exploration Co. (Lexco).  Both companies were involved in oil and gas
exploration and development, and Harry and Bruce had agreed to work together on
pursuing various oil and gas projects.  

JIMCO
Enterprises, Inc. was a pumping company owned by other individuals not involved
in this lawsuit that, among other things, provided pumping services to several
wells owned by Lexco.  In 1998, Bruce and Harry began efforts to jointly
acquire JIMCO.  Henderson represented both Bruce and Harry in their joint
effort to acquire JIMCO.  Harry, for reasons unknown and not relevant to this
dispute, decided not to pursue the acquisition.  Bruce continued his efforts to
acquire JIMCO, and  Henderson assisted Bruce in forming RWR Holdings, Inc. for
purposes of the acquisition.  In turn, RWR became the sole shareholder of
JIMCO, and Bruce was the sole shareholder of RWR.  Henderson represented Bruce
and RWR through the acquisition of JIMCO, and, as a result, was aware of Bruce=s investments and obligations because
he assisted Bruce in making the financial arrangements for the purchase.








After
the JIMCO closing, a dispute arose between Henderson and Bruce regarding legal
fees and Henderson=s representation of Bruce.  To settle those issues, Henderson
and Bruce entered into a mutual release on July 6, 1999.  Under the terms of
the release,  Henderson released Bruce from all claims for payment of legal
services rendered in connection with the JIMCO acquisition and agreed to
refrain from representing Harry in any claims for reimbursement relating to the
JIMCO acquisition.   In return, Bruce released Henderson:

from all
claims made, known and unknown, arising out of Henderson=s representation of Bruce R. Lively in the JIMCO
acquisition, and without waiver of any conflict of interest that may arise
in the future from Henderson=s representation of Harry B. Lively, inclusive of any corporation or
entity owned or controlled by Harry B. Lively, in any matter affecting Bruce R.
Lively from and after the date of this mutual release, does hereby release Henderson and J. Randle
Henderson from any claims arising out of Henderson=s representation of Harry B. Lively, inclusive of any
corporation or entity owned or controlled by Harry B. Lively, in any matter
affecting Bruce R. Lively prior to the date of this mutual release.

 

(emphasis added) 
Although Henderson represented Harry subsequent to this date, he had no
involvement with any of Bruce=s corporate entities thereafter.  

In the
meantime, JIMCO continued pumping operations at Lexco=s wells under a pre-existing oral
agreement for several months and Harry and Bruce continued to work together on
other oil and gas activities. Bruce located a drilling operator, Kerns Oil
& Gas Co. (Kerns), to develop some new wells on Lexco=s property.  Bruce turned over final
negotiations between Kerns and Lexco to Lexco.  At the same time, Bruce was
negotiating his own pumping agreement between JIMCO and Kerns for some of Kerns= existing wells on Lexco=s property.  Henderson had no
involvement in any of these transactions on Bruce=s behalf.  








Before
Kerns and JIMCO reached an agreement, however, Kerns bypassed JIMCO and hired
JIMCO=s pumper directly to pump its wells
on Lexco=s property.  On November 15, 1999,
Henderson, on behalf of Lexco, notified Bruce, as president of JIMCO, that Aall services, including but not
limited to pumping and consulting performed by JIMCO@ were terminated effective December
1, 1999.  This letter indicated that Kerns would be taking over the services
previously performed by JIMCO.

Bruce
filed suit against Henderson on November 6, 2003, alleging breach of the
release and breach of fiduciary duty because of Henderson=s representation of Harry in
terminating the Lexco/JIMCO pumping agreement.  After filing a general denial,
Henderson responded with a traditional and no-evidence summary judgment
motion.  In this motion, Henderson contended he was entitled to a traditional
summary judgment because Bruce lacked standing to assert damages, the release
negated Bruce=s claims, and there was no fiduciary relationship between Henderson and
Bruce at the time of the alleged breach.  Henderson also asserted there was no
evidence of a breach of the release or any damage to Bruce individually. 
Finally, Henderson alleged there was no evidence of (1) any fiduciary duty between
Henderson and Bruce after July 1999, (2) breach of any fiduciary duty, or (3)
any damage to Bruce, individually, resulting from any breach.  After various
other filings by both parties, the trial court entered final summary judgment
in favor of Henderson on September 6, 2005.  This appeal timely followed.

II. Standard of Review

We
review the granting of summary judgment de novo.  Cruikshank v.
Consumer Direct Mortg., Inc., 138 S.W.3d 497, 500 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied).  We may affirm a summary judgment only on grounds specifically stated
in the motion.  Id.  Where, as here, the trial court=s order granting summary judgment
does not specify on what grounds it was granted, it must be affirmed if any of
the grounds asserted are meritorious.  Western Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005). 








A
defendant moving for a traditional summary judgment under rule 166a must
conclusively disprove an essential element of the plaintiff=s cause of action or conclusively
prove all the elements of an affirmative defense that would overcome plaintiff=s cause of action.  Cruikshank,
138 S.W.3d at 500.  A party may also move for summary judgment on the ground
that there is no evidence of one or more essential elements of a claim or
defense on which an adverse party would have the burden of proof at trial.  See
 Tex. R. Civ. P. 166a(i); Western
Invs., Inc., 162 S.W.3d at 550.   Once a no‑evidence summary judgment
has been filed, the non‑movant must bring forth more than a scintilla of
evidence to raise a fact issue on the challenged elements.  Cruikshank,
138 S.W.3d at 500.  In reviewing a summary judgment, we consider the evidence
in the light most favorable to the non‑movant and resolve any doubt in
the non‑movant=s favor.  Western Invs., Inc., 162 S.W.3d at 550.

III. Analysis

A.        Traditional and No Evidence
Summary Judgment on Bruce=s Claims

In his
first issue, Bruce contends the trial court erred in granting summary judgment
because Henderson failed, as a matter of law, to establish that (1) Bruce
lacked standing to assert damages on behalf of JIMCO or RWR, (2) the release
negated Bruce=s claims, (3) Henderson owed no fiduciary duty to Bruce, and (4)
Henderson was entitled to a no-evidence summary judgment.  Because we conclude
that the clear wording of the release negates Bruce=s breach of contract claim and there
was no evidence of at least one element of Bruce=s breach of fiduciary duty claim, we
overrule his first issue.

1.         Breach of Contract

Bruce
sued Henderson for breach of contract alleging Henderson breached the release
because he represented Harry in matters affecting Bruce, i.e., termination of
the Lexco pumping contract with Bruce.  Henderson filed a motion for summary
judgment claiming, among other things, that the plain language of the release
does not prohibit Henderson from representing Harry in the future.  








To recover under a breach of contract cause of action, a
plaintiff must show: (1) the existence of a valid contract, (2) performance or
tendered performance by the plaintiff, (3) breach of the contract by the
defendant, and (4) damages sustained as a result of the breach.  Renteria v.
Trevino, 79 S.W.3d 240, 242 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  Henderson, as movant for summary judgment, had the
burden to establish by competent summary judgment evidence that there was no genuine
issue of material fact as to one or more essential elements of Bruce=s breach of
contract cause of action.  See Elliott-Williams Co. v. Diaz, 9 S.W.3d
801, 803 (Tex. 1999).  

In
construing a written contract, our primary goal is to ascertain the true
intentions of the parties as expressed in the instrument. J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  To do so, we must
examine and consider the entire contract to ensure no provisions are rendered
meaningless.  Id.  Finally, A[c]ontract terms are given their
plain, ordinary, and generally accepted meanings unless the contract itself
shows them to be used in a technical or different sense.@  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 662 (Tex. 2005).








The
release indicates it was entered into because Henderson had made a demand on
Bruce for full payment for legal services rendered in connection with the JIMCO
acquisition.  Bruce objected to paying all of Henderson=s fees because some of the fees
occurred when Henderson represented both Bruce and Harry.  When Bruce and
Henderson settled their dispute, they executed the mutual release, in which
Henderson released Bruce from all claims for payment of legal services rendered
in connection with the JIMCO acquisition and agreed to refrain from
representing Harry in any claims for reimbursement relating to the JIMCO
acquisition.   In return, Bruce released Henderson from any claims arising out
of Henderson=s representation in the JIMCO acquisition and from any claims arising out
of his representation of Harry in any matter prior to the date of the release. 
Bruce=s release was, Awithout waiver of any conflict of
interest that may arise in the future from Henderson=s representation of Harry B. Lively,
. . . in any matter affecting Bruce R. Lively from and after the date of this
mutual release.@

Bruce alleges that the language in
the release referencing non-waiver of future conflicts of interest is a
contractual prohibition against any future conflict of interest.  However, the
plain language of the release reflects that Bruce has not waived his remedies
for any future conflicts of interest.  Thus, rather than prohibiting future conflicts,
the release instead indicates Bruce has not waived his remedies for any future
conflicts of interest that could arise from Henderson=s representation of Harry or Harry=s corporate entities.  Accordingly,
because the wording of the release negates Bruce=s breach of contract claim, Henderson
established no liability under the contract as a matter of law. 

2.         Breach
of Fiduciary Duty

In his second cause of action, Bruce
alleged Henderson breached a fiduciary duty owed to him as a result of their
former attorney-client relationship.  There are two types of fiduciary
relationships: (1) a formal fiduciary relationship, arising as a matter of law
such as that between an attorney and his client; and (2) an informal fiduciary
relationship, based on a confidential relationship that may arise from other
moral, social, domestic or personal associations.  See Stephenson v.
LeBoeuf, 16 S.W.3d 829, 836 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  Bruce=s allegation of breach of fiduciary duty is limited to breach
of the attorney-client relationship.  Thus, our discussion of the fiduciary
relationship between the parties here is limited to those arising out of the
attorney-client association.








An attorney has a fiduciary duty to
his client when an attorney‑client relationship is created.  See
Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988); Greene=s Pressure Treating & Rentals,
Inc. v. Fulbright & Jaworski, L.L.P., 178 S.W.3d 40, 43 (Tex. App.CHouston [1st Dist.] 2005, no pet.). 
An attorney‑client relationship only arises when an attorney agrees to
render professional services to a client.  Greene=s Pressure Treating & Rentals,
Inc., 178 S.W.3d at
43.  This relationship may be expressly created by contract, or impliedly
created through the parties= actions. Id.  In the absence of an agreement to the
contrary, the attorney-client relationship and the concomitant fiduciary
relationship terminates upon completion of the purpose of employment.  Stephenson,
16 S.W.3d at 836.

Here, the parties agree Henderson and
Bruce had an attorney-client relationship for the purposes of acquiring JIMCO
and that Henderson has not represented Bruce since the JIMCO acquisition. 
Bruce contends that the fiduciary attorney-client relationship extended beyond
the JIMCO acquisition.  The cases cited by Bruce in support of his argument
that this fiduciary relationship continued ad infinitum are inapposite. 
See Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988) (determining
that discovery rule applies to legal malpractice cases because of the fiduciary
relationship between attorney and client); Maryland Am. Gen. Ins. Co. v. Blackmon,
639 S.W.2d 455, 458 (Tex. 1982) (attorney-client privilege continues
after attorney-client relationship ends); Archer v. Griffith, 390 S.W2d
735, 739 (Tex. 1964) (AThe [rule of trusteeship] . . . applies to a contract or
other transaction relating to compensation provided the attorney‑client
relationship was in existence at the time.@).             Further,
nothing in our record indicates that this relationship continued beyond the acquisition
of JIMCO.  Indeed, the dispute leading to the parties= release arose out of the JIMCO
acquisition, and the parties agree that their attorney-client relationship
terminated at that time.  Moreover, Bruce=s allegations of breach of fiduciary
duty rest on Henderson=s representation of Lexco in terminating a service agreement
with JIMCO, which is a separate legal entity from Bruce.  See Grain Dealers
Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997) (Corporate entities
are separate and distinct from their shareholders, even when there is only one
shareholder.). As such, Henderson had no attorney-client relationship with
JIMCO and thus owed JIMCO no fiduciary duty. 








Bruce has presented no evidence of a
continuing attorney-client relationship between Henderson and Bruce after the
date of the release.  He has likewise presented no evidence of any
attorney-client relationship between Henderson and JIMCO.  Because Bruce
presented no evidence of a fiduciary relationship, he has failed to present
evidence of one or more essential elements of his claim.  Accordingly, the
trial court properly granted Henderson=s no-evidence summary judgment on
Bruce=s breach of fiduciary duty claim.  We
overrule Bruce=s first issue.

B.        Bruce=s Amended Petition

In his second issue, Bruce contends
the trial court erroneously disposed of claims he alleged in his second amended
original petition not addressed by Henderson=s summary judgment motion.   However,
Bruce did not bring any new claims in his amended petition; instead, he brought
the same causes of action, breach of contract and fiduciary duty, both
individually and in his capacity as president of JIMCO and RWR.  Bruce amended
his petition in response to Henderson=s motion for summary judgment
alleging that any damages resulting from Henderson=s alleged conflict of interest
accrued to JIMCO, not Bruce.  Bruce contends that because he is the sole
shareholder of JIMCO and RWR, he is entitled to bring an action on behalf of
those corporations. 

A plaintiff=s timely filed amended pleading
supersedes all previous pleadings and becomes the controlling petition in the
case regarding theories of recovery.  Tex.
R. Civ. P. 65.  Ordinarily, a defendant is required to amend his motion
for summary judgment to address any additional claims.  Espeche v. Ritzell,
123 S.W.3d 657, 663B64 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  However, if a
motion for summary judgment is sufficiently broad to encompass later-filed
claims, the movant need not amend his motion.  Id. at 664.  Henderson
conclusively proved that any breach of contract claim brought by either Bruce,
individually, or as a representative of JIMCO and RWR was negated by the plain
language of the contract.  Because the grounds asserted by Henderson in his
motion for summary judgment also vitiate the corporations= claims, we overrule Bruce=s second issue.[1]









 C.       Henderson=s Cross Point Requesting Damages for
Frivolous Appeal

Henderson requests an award for
frivolous appeal damages.  Henderson contends that sanctions are appropriate
because Bruce had no standing to assert the damages he alleged, ignored
well-settled Texas law regarding the distinction between corporations and
shareholders, Ablatently misread@ the release, and failed to present any evidence to support
his theories of recovery.  

This court is authorized to award a
prevailing party damages if we determine an appeal is frivolous.  See Tex. R. App. P. 45.  Although the
granting of sanctions is within our discretion, a sanction should be applied only
with prudence, caution, and after careful deliberation.  See Azubuike v.
Fiesta Mart, Inc., 970 S.W.2d 60, 66 (Tex. App.CHouston [14th Dist.] 1998, no pet.). 
In determining the propriety of sanctions, we must view the record from the
appellant=s point of view at the time the appeal was filed, and we may not consider
any matter that is not in the record, briefs, or other papers filed in this
court.  See Tex. R. App. P.
45; Azubuike, 970 S.W.2d at 66.  Furthermore, we must focus on whether
appellant had a reasonable expectation of reversal or whether he merely pursued
the appeal in bad faith.  Azubuike, 970 S.W.2d at 66.

Although the imposition of sanctions
is within our discretion, we may do so only in circumstances that are truly
egregious. Angelou v. African Overseas Union, 33 S.W.3d 269, 282 (Tex.
App.CHouston [14th Dist.] 2000, no pet.). 
Factors to be considered in deciding whether to impose sanctions against an
appellant include the failure to present a complete record, the raising of
issues for the first time on appeal, the failure to file a response to a cross‑point
requesting sanctions, and the filing of an inadequate appellate brief.  Tate
v. E.I. Du Pont de Nemours & Co., Inc., 954 S.W.2d 872 875 (Tex. App.CHouston [14th Dist.] 1997, no writ).








Although most of Bruce=s arguments on appeal may be without
merit, we do not agree the record in this case evidences egregious
circumstances warranting sanctions.  Accordingly, we decline Henderson=s request.

The judgment of the trial court is
affirmed.

 

 

 

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered and Memorandum
Opinion filed November 13, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.[2]

 









[1]  Moreover, Henderson points out that Bruce=s notice of appeal gives no indication that he is
appealing in a representative capacity on behalf of his corporate entities. 
Bruce, in his individual capacity, is not legally the same person as Bruce in
his capacity as president of JIMCO and RWR.  See Elizondo v. Tex. Natural
Res. Conservation Comm=n, 974 S.W.2d 928, 931 (Tex. App.CAustin 1998, no pet.) (holding that because appellant
did not perfect appeal in representative capacity, appellant was only before
court in individual capacity).  Thus, Bruce is only before this court in his
individual capacity, and we lack jurisdiction to consider any claims he may
have as a representative of JIMCO or RWR.





[2]  Senior Justice Hudson sitting by assignment.