

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00240-CV

_____

SHYAM A. JHA, Appellant

V.

BANK OF AMERICA, N.A., Appellee

---

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2019-000608-2

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Shyam A. Jha, appearing pro se, appeals from the trial court's judgment in favor of Appellee Bank of America, N.A. (BANA) in a suit for account stated. We will affirm.

## I. Background

In January 2019, BANA, a wholly-owned subsidiary of Bank of America Corporation and the successor-in-interest to FIA Card Services, N.A. (FIA) f/k/a MBNA America, N.A., sued Jha to recover a credit card debt in the amount of $2,976.96.[1]

In October 2020, the trial court held a bench trial. At the start of the trial, BANA offered Jha's credit card account statements—totaling ninety-six pages—into evidence under the business records exception to the hearsay rule. *See* Tex. R. Evid. 803(6), 902(10). Jha objected to the credit card account statements' admission on the grounds that the business record affidavit accompanying the statements did not satisfy the requirements of Rule 902(10) and that the records were not "complete." The trial court overruled Jha's objection and admitted the credit card account statements into evidence.

BANA then called Jha as a witness. Under examination from BANA's counsel, Jha admitted that he currently resided at the address reflected on the credit card

---

[1]The specific cause of action asserted in BANA's petition is "account stated."

account statements and had lived there for approximately eighteen years; that he had an account with BANA ending in 3706 as reflected on the statements; that he had used the account to make purchases; that he had made payments on the account; that he had ceased making payments on the account; and that there was a remaining balance due and owing on the account.

Jha argued that because he had originally opened his credit card account with MBNA America—BANA's predecessor-in-interest[2]—and because BANA had neither proven what rights it had as "assignee" nor had offered the original agreement between Jha and MBNA America into evidence, BANA had not proven all the elements of its account-stated cause of action. Jha also argued that the amount of the debt was incorrect because it had been calculated based on amended credit terms to which Jha had not agreed.[3] However, on cross-examination, Jha admitted that he had never objected to any of the amendments to the credit agreement and had continued to use his credit card after each amendment.

In March 2022, the trial court signed a judgment awarding BANA $2,600.10 and court costs. Upon Jha's request, the trial court issued findings of fact and conclusions of law in May 2022. This appeal followed.

---

[2]Jha opened his credit card account in 2003. MBNA America changed its name to FIA in 2006. FIA "merged into and under the charter and title of" BANA in 2014.

[3]When asked what he believed to be the correct debt amount, Jha testified that he had "not calculated that."

## II. Discussion

Jha raises two issues on appeal. First, he asserts that the trial court abused its discretion by admitting his credit card account statements into evidence as business records. Second, he argues that the evidence is factually insufficient to support the trial court's judgment. These arguments lack merit.

## A. Admission of the Credit Card Account Statements

In his first issue, Jha argues that the trial court erred by admitting his credit card account statements into evidence as business records. Specifically, Jha contends that the business records affidavit accompanying the statements did not satisfy the requirements of Rules 803(6) and 902(10) and that he had "demonstrate[d] that the source of information or the method or circumstances of preparation indicate[d] a lack of trustworthiness." *See* Tex. R. Evid. 803(6)(E), 902(10).

We will not disturb a trial court's evidentiary rulings absent an abuse of discretion. *See Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020); *Bay Area Healthcare Grp. Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). "A trial court abuses [its] discretion when it acts without regard for guiding rules or principles." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). But even if a trial court's evidentiary ruling constitutes an abuse of discretion, reversal is appropriate only if the error was harmful. *Id.*; Tex. R. App. P. 44.1.

Hearsay is not admissible unless a statute or the rules of evidence provide otherwise. Tex. R. Evid. 802. Pursuant to Rule 803(6)—commonly referred to as the

4

business records exception—records of a regularly conducted activity are admissible provided that the requirements of the rule are met.[4] Tex. R. Evid. 803(6). Moreover, business records accompanied by an affidavit meeting the requirements of Rule 902(10) are self-authenticating. Tex. R. Evid. 902(10).

Here, the business records affidavit attached to Jha's credit card account statements satisfied the requirements of Rules 803(6) and 902(10). The affiant Latasha York averred that she is "a custodian of records of BANA and [is] familiar with the manner in which its records are created and maintained by virtue of [her] duties and responsibilities." *See* Tex. R. Evid. 803(6)(D), 902(10)(B). York specified that

---

[4]Rule 803(6) provides that "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted business activity;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

(E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

Tex. R. Evid. 803(6).

"96 pages of records" were attached to her affidavit and confirmed that they were "the original records or exact duplicates of the original records . . . ." *See* Tex. R. Evid. 902(10)(B). She further averred that "[t]he records were made at or near the time of each act or event they purport to describe occurred"; that they "were kept in the course of [a] regularly conducted business activity"; and that "[i]t is the regular practice of the business activity to make the records." *See* Tex. R. Evid. 803(6)(A)–(C), 902(10)(B).

Although Jha attempted "to demonstrate that the source of information or the method or circumstances of preparation" of the credit card account statements "indicate a lack of trustworthiness," we cannot conclude that the trial court erred by implicitly finding that he failed to do so. *See* Tex. R. Evid. 803(6)(E). First, Jha argues that the records should be excluded because York's affidavit "makes no statement about her personal knowledge of [FIA f/k/a MBNA America]," BANA's predecessor-in-interest. However, because FIA f/k/a MBNA America "merged into and under the charter and title of" BANA in October 2014, York's averments concerning BANA's business practices and record keeping are sufficient since BANA "stands in the shoes" of FIA f/k/a MBNA America and its business operations are considered a continuation of its predecessor's.[5] *See Greene's Pressure Treating & Rentals,*

---

[5]We note that all of the credit card account statements attached to York's affidavit are dated after the October 2014 merger of FIA f/k/a MBNA America into BANA. Thus, even if BANA's business practices and record-keeping procedures were not deemed a continuation of those of its predecessor-in-interest, Jha's complaint

6

*Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 44 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("In a merger, the successor organization stands in the shoes of prior management and continues the operations of the prior entity."); *see also Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 666 (Tex. App.—Austin 2005, no pet.) (holding that ExxonMobil, as Mobil Oil's successor-in-interest by merger, "st[ood] in the shoes" of Mobil Oil and thus had standing to enforce a restrictive covenant in a special warranty deed reflecting Mobil Oil as the grantor). Second, Jha argues that York's affidavit is "missing important elements." Among other deficiencies, Jha states that York "does not declare what is the current balance owed on Jha's account" and that her affidavit

> is a form document that never mentions Jha by name, does not mention Jha's account number, does not mention when Jha opened the account, does not mention what was the ending balance or the starting balance of the account when it acquired the account from MBNA or FIA card services, does not mention when Jha's account was charged off and what was the account balance remaining unpaid, and what was Jha's beginning account balance when the account was absorbed into BANA.

However, as Jha acknowledges in his brief, "[t]he rules of evidence do not require that the qualified witness who lays the predicate for the admission of business records . . . have personal knowledge of the contents of the record; the witness is required only to have personal knowledge of the manner in which the records were kept." *Singh v. Citibank (S.D.), N.A.*, No. 03-10-00408-CV, 2011 WL 1103788, at

would be rendered moot by the fact that all of the records admitted into evidence appear to have been generated after the merger.

7

*4 (Tex. App.—Austin Mar. 24, 2011, no pet.) (mem. op.). York's affidavit serves only to authenticate the credit card account statements, which speak for themselves; thus, the rules of evidence do not require her affidavit to corroborate the records' content. *See* Tex. R. Evid. 803(6), 902(10)(B). Because York's affidavit meets the requirements of Rules 803(6) and 902(10), the trial court did not err by admitting the credit card account statements. *See id.*

In sum, Jha has shown no abuse of discretion in the trial court's decision to admit the credit card account statements attached to York's affidavit into evidence. Accordingly, we overrule Jha's first issue.

## B.	Sufficiency of the Evidence

In his second issue, Jha argues that the evidence is factually insufficient to support the trial court's judgment. This argument is without merit.

### 1.	Standard of Review

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). When, as here, the party without the burden of proof on a fact issue complains of an adverse fact finding, that party must show that "insufficient evidence" supports the finding—that is, that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of contrary credible evidence. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181,

8

184 (Tex. App.—Fort Worth 1995, no writ); *see Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 St. Mary's L.J. 1099, 1134–35 n.203 (2019). We set aside a finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza*, 395 S.W.2d at 823. "In assessing the evidence, we do not act as a factfinder; we may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder." *Chenevert*, 557 S.W.3d at 765 (citing *In re Estate of Parrimore*, No. 14-14-00820-CV, 2016 WL 750293, at *5 (Tex. App.—Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.)). Rather, the trial court, as the trier of fact, is the "sole judge of the credibility of the witnesses and the weight to afford their testimony." *Id.* (quoting *Estate of Parrimore*, 2016 WL 750293, at *5).

**2.     The Evidence Is Sufficient to Support the Trial Court's Judgment**

To prevail on its account-stated cause of action, BANA was required to prove the following elements by a preponderance of the evidence: (1) transactions between the parties that give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties that fixes an amount due; and (3) the party to be charged—in this case, Jha—made a promise, express or implied, to pay the

indebtedness. *Damron v. Citibank (S.D.), N.A.*, No. 03-09-00438-CV, 2010 WL 3377777, at *4 (Tex. App.—Austin Aug. 25, 2010, pet. denied) (mem. op.) (first citing *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.); and then citing *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.)). There is sufficient record evidence to support the trial court's determination that BANA proved each of these elements.

To support its account-stated claim, BANA relied upon both the credit card account statements discussed above and Jha's own testimony regarding the account. As previously noted, Jha admitted that he currently resided at the address reflected on the credit card account statements and had lived there for approximately eighteen years; that he had an account with BANA ending in 3706 as reflected on the statements; that he had used the account to make purchases; that he had made payments on the account; that he had ceased making payments on the account; and that there was a remaining balance due and owing on the account.

Jha complains that "BANA did not introduce any evidence of the original agreement between Jha and MBNA [America]" or "of a separate agreement between BANA and Jha." However, no such proof was required for BANA to prevail on its account-stated claim. Because the requisite agreement can be express or implied, BANA was not required to present evidence of a written cardmember contract but could instead present evidence of acts and conduct by the parties that give rise to an implied agreement fixing an amount due and an implied promise by Jha to pay the

10

indebtedness. *See Damron*, 2010 WL 3377777, at *4; *see also Busch*, 312 S.W.3d at 299; *Dulong*, 261 S.W.3d at 894. Such acts and conduct could include Jha's use of the card to make purchases; his making payments on the account; and his acquiescence in BANA's imposition of interest, fees, and charges. *See Damron*, 2010 WL 3377777, at *4; *see also Busch*, 312 S.W.3d at 299–300; *Dulong*, 261 S.W.3d at 894. The credit card account statements together with Jha's own admissions concerning the account, particularly his purchases and payments, are sufficient to establish a series of transactions between BANA and Jha, as well as acts and conduct establishing (1) that BANA and Jha had an implied agreement fixing an amount due equal to the cash advances that he had received and the purchases he had made, less payments and credits to his account, plus interest and fees and (2) that Jha impliedly promised to pay BANA the amount due. *See, e.g.*, *Damron*, 2010 WL 3377777, at *5; *McFarland v. Citibank (S.D.), N.A.*, 293 S.W.3d 759, 763 (Tex. App.—Waco 2009, no pet.); *Dulong*, 261 S.W.3d at 894.

Jha also argues that he never explicitly agreed to the various changes to the terms of his account agreement over the years.[6] However, just as the agreement giving rise to BANA's account-stated claim can be implied by the parties' conduct, so too

---

[6] Jha also questions whether BANA, as FIA f/k/a MBNA America's "assignee," had authority to change the terms of the agreement. However, because—as set forth above—BANA "stands in the shoes" of FIA f/k/a MBNA America, it has the same rights to modify the agreement as did its predecessor-in-interest. *See Greene's Pressure Treating & Rentals, Inc.*, 178 S.W.3d at 44; *Voice of Cornerstone Church Corp.*, 160 S.W.3d at 666.

can Jha's acceptance of any modified terms. *See Damron*, 2010 WL 3377777, at *4; *Busch*, 312 S.W.3d at 299; *Dulong*, 261 S.W.3d at 894. At trial, Jha admitted that he had continued to use his credit card and to make payments on his account after being notified of each of the complained-of changes to the terms of the agreement and that he had never contacted BANA to reject the modified terms. While Jha testified that he had never agreed to the modified terms, the trial court, as factfinder, was free to disbelieve his testimony or to give it little weight. *See, e.g.*, *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied). Bearing in mind the adage that "actions speak louder than words," we cannot say that the trial court's determination that Jha had impliedly accepted all of the changes to the credit agreement is against the great weight and preponderance of contrary credible evidence. *See Gooch*, 902 S.W.2d at 184.

In sum, the credit card account statements together with Jha's own testimony concerning the charges and payments on his account provided sufficient evidentiary support for the trial court's determination that BANA had proven each element of its account-stated claim. Accordingly, we overrule Jha's second issue.

## C.    Judgment Amount

In its petition, BANA sought a judgment in the amount of $2,976.96, the balance shown on the last credit card account statement attached to York's affidavit, but the trial court awarded BANA a judgment of only $2,600.10. In its brief, BANA asks that we remand this matter to the trial court with instructions to increase the

amount of the judgment to $2,976.96. Although the credit card account statements appear to support BANA's requested judgment amount and the trial court failed to provide any explanation as to how it derived its lesser judgment amount of $2,600.10,[7] because BANA did not file a notice of appeal, we cannot grant it more favorable relief than did the trial court except for just cause. *See* Tex. R. App. P. 25.1(c); *Perlman v. EKLS Firestopping & Constr., LLC*, No. 05-18-00971-CV, 2019 WL 2710752, at *5 (Tex. App.—Dallas June 28, 2019, no pet.) (mem. op.). Because BANA's brief fails to state any just cause that would warrant granting the relief sought in the absence of a timely notice of appeal, we deny its request to remand this case.

## III.  Conclusion

Having overruled both of Jha's issues and having determined that no just cause exists to grant BANA's remand request, *see* Tex. R. App. P. 25.1(c), we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 27, 2023

---

[7]The trial court's judgment amount is $376.86 less than the sum requested by BANA. This difference matches the amount of "[t]otal interest charged in 2014" reflected on the first credit card account statement attached to York's affidavit. However, the trial court did not explain its reasoning for excluding this charged interest from the judgment.