# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00234-CV

---

**Skyler Williams, Derivatively on behalf of Blackland Construction, Inc., Appellant**

**v.**

**David Gottfried and The Law Offices of David Gottfried, P.C., d/b/a The Gottfried Firm, Appellees**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-000961, THE HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Skyler Williams, derivatively on behalf of Blackland Construction, Inc., appeals from the trial court's order granting David Gottfried and The Law Offices of David Gottfried, P.C.'s (collectively, Gottfried) no-evidence motion for summary judgment and dismissing Williams's claims against them with prejudice. For the following reasons, we affirm in part and reverse and remand in part.

### BACKGROUND

Blackland Construction, Inc. (Blackland) was formed in February 2014 by James Miller and Skyler Williams. At the time it was formed, Miller and Williams were each issued 100,000 shares of stock, meaning each owned a 50% interest in the corporation. The same month Blackland was formed, Miller retained attorney David Gottfried of The Law Offices of

David Gottfried, P.C. to pursue a lawsuit on his behalf against Miller's mother's company—Austin 4 Square, LLC, alleging unlawful termination (Austin 4 Square Litigation). According to Williams, based on Gottfried's advice, Williams believed that the suit would benefit Blackland because Blackland would "pick up [Austin 4 Square's] customers." At the end of the first meeting where all three were present, Williams and Miller paid Gottfried his initial retainer fee from an American Express credit card that was used as Blackland's primary line of credit. According to Williams, he and Miller had an oral agreement that Miller could use Blackland's American Express card to pay for the attorney's fees and expenses related to the Austin 4 Square Litigation, for which Miller would reimburse Blackland. The Austin 4 Square Litigation continued until early 2016, when it resulted in a settlement to Miller of $125,000, to be paid out to him in various installments. At the close of the suit, Blackland had paid Gottfried a total of approximately $77,000 in attorney's fees and expenses resulting from the litigation. Contrary to Miller and Williams's oral agreement, Miller did not personally reimburse the $77,000 to Blackland.

In late 2015, Blackland's board of directors held a meeting where they proposed a resolution to buy out Williams's share of the corporation. At the time, Blackland's board of directors was comprised of Miller, Miller's wife Abrielle O. Miller, Williams, and Williams's wife Shelia Williams, with Miller serving as the President of Blackland. The buy-out was ultimately unsuccessful; Miller claimed Williams prevented the buy-out by shutting off Blackland's line of credit. As a result of the failed buy-out, Miller, on behalf of Blackland, retained Gottfried to file suit against Williams for theft and conversion in the district court of Williamson County (Williams Litigation). Williams filed a motion to show authority, claiming that Miller lacked the authorization from the board of directors to retain Gottfried as Blackland's attorney. After hearing testimony from several witnesses, the district court denied the motion to show authority. The case

2

was tried to a jury verdict and is currently on appeal.[1] Gottfried's attorney's fees and expenses for the Williams Litigation amounted to approximately $80,000, which Blackland paid to Gottfried in April 2016.[2] Williams, on behalf of Blackland, twice demanded the return of the $80,000 based on his belief that the funds were unauthorized. Both demands were denied.

In 2020, Williams, derivatively on behalf of Blackland, filed this underlying suit against Gottfried and his firm for breach of fiduciary duty, equitable fee forfeiture, and for return of attorney's fees under Texas Government Code Section 82.063. Specifically, Williams alleged that first, because Williams believed that Gottfried represented Blackland in the Austin 4 Square Litigation, Gottfried breached his fiduciary duty to Blackland by representing Miller in the Williams Litigation; and that second, Gottfried breached his fiduciary duty to Blackland when he represented Blackland in the Williams Litigation because Gottfried failed to advise the board of directors of an alleged conflict of interest. Lastly, Williams alleged that Gottfried breached his fiduciary duty owed to Blackland by allegedly helping Miller set up a competing corporation (Sure-Wall LLC).

Gottfried filed a no-evidence motion for summary judgment, claiming that (1) he only represented Miller in Miller's personal capacity in the Austin 4 Square Litigation and therefore no fiduciary duty between Blackland and Gottfried ever existed in the course of the Austin 4 Square Litigation, and that (2) the district court in the Williams Litigation, in denying Williams's motion to show authority, already explicitly found that Miller had the authority to retain Gottfried on behalf of Blackland in the Williams Litigation. In support of their no-evidence motion

---

[1] Gottfried is no longer the counsel of record in the Williams Litigation.

[2] Williams concedes that $5,000 of the total amount paid to Gottfried was authorized, meaning Gottfried allegedly received unauthorized payments in the amount of $75,000.

for summary judgment, Gottfried and the law firm attached an affidavit of David Gottfried, the attorney-client engagement letter executed in the Williams Litigation, excerpts from Skyler Williams's deposition from the Williams Litigation, and the transcript from the motion-to-show-authority hearing. Williams filed a response to the no-evidence motion, contending that there was more than a scintilla of evidence showing there was an implied or express attorney-client relationship between Blackland and Gottfried in the Austin 4 Square Litigation, and that there was more than a scintilla of evidence showing that Gottfried breached his fiduciary duty to Blackland through various actions surrounding the Williams Litigation. In support of his response, Williams submitted as evidence an affidavit of Skyler Williams and a declaration of expert William Van Fleet. The trial court granted Gottfried's no-evidence motion for summary judgment and dismissed the entirety of the suit with prejudice. Williams timely appealed.

**DISCUSSION**

Williams asserts five issues on appeal: (1) whether Williams presented more than a scintilla of evidence that Blackland had an attorney-client relationship with Gottfried and his firm in the course of the Austin 4 Square Litigation, (2) whether Williams presented more than a scintilla of evidence that Gottfried breached a fiduciary duty owed to Blackland by failing to advise Blackland's board of directors of a conflict of interest before representing Blackland in the Williams Litigation, (3) whether the order granting the no-evidence motion for summary judgment granted more relief than was requested, (4) whether the no-evidence motion for summary judgment was filed prematurely because there was not adequate time for discovery, and (5) whether the trial court misplaced the burden of proof and persuasion on Williams's breach-of-fiduciary-duty

4

claims. Because the fifth issue requires us to address the standard of review on a no-evidence motion for summary judgment, we address it first.

### *Whether the trial court misplaced the burden of proof and persuasion on the breach-of-fiduciary-duty claim*

We review a trial court's ruling on a motion for summary judgment de novo. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Rule 166a(i) allows a party to utilize a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *See* Tex. R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, the appellate court must consider all evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Gonzales v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015). The appellate court will affirm a no-evidence summary judgment only if the record shows one of the following: (1) there is no-evidence of the challenged element, (2) the evidence offered to prove the challenged element is no more than a scintilla, (3) the evidence establishes the opposite of the challenged element, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. [3] *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015).

---

[3] Although Gottfried and the law firm submitted evidence in support of their no-evidence motion for summary judgment, we are precluded from reviewing this evidence. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004) (providing that, if no-evidence motion for summary judgment includes evidence, that evidence should not be considered unless it creates fact question). Our focus instead is whether Williams, as the non-movant, presented more than a scintilla of evidence to support the challenged element. *See First United Pentecostal Church of Beaumont*

Here, Williams argues that the burden of proof on a breach-of-fiduciary-duty claim is on the defendant, and, accordingly, Gottfried could not utilize a no-evidence motion for summary judgment to challenge this type of claim. Therefore, Williams argues, the order granting the no-evidence motion was improper and the case should be reversed and remanded to the trial court on this point alone. We disagree. A breach-of-fiduciary-duty claim requires the plaintiff to prove the required elements; only after the existence of a fiduciary duty is established does the burden then shift to the fiduciary to show evidence of fairness. *See Kiger v. Balestri*, 376 S.W.3d 287, 291 (Tex. App.—Dallas 2012, pet. denied) (providing plaintiff had burden of proof to overcome defendant's no-evidence motion for summary judgment on breach-of-fiduciary-duty claim); *see also Hutson v. Blow*, No. 11-91-235-CV, 1993 WL 13141568 at *3 (Tex. App.—Eastland Apr. 29, 1993, no writ) (not designated for publication). Gottfried did not concede that a fiduciary duty existed between himself and Williams (on behalf of Blackland) in the Austin 4 Square Litigation; instead, his no-evidence motion for summary judgment focused on challenging the existence of evidence on at least one element of Williams's claim—the first element requiring that a fiduciary duty exist before a breach can occur. *See* Tex. R. Civ. P. 166a(i); *see Beck v. L. Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App. Austin—2009, no pet.) (enumerating breach-of-fiduciary-duty claim elements as existence of fiduciary relationship, breach of that duty by defendant attorney, causation, and damages). Williams's support for this contention arises from several cases, none of which are analogous to the facts and procedural posture of the case here. For example, in Williams's cited case *Sorrell v. Elsey*, the

---

*v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (providing that, to defeat no-evidence motion for summary judgment, non-movant must produce evidence raising genuine issue of material fact as to challenged elements).

parties conceded that a fiduciary relationship existed; the issue instead was whether the fiduciary receiver breached his fiduciary duty in connection with a deed conveyance. 748 S.W.2d 584, 586 (Tex. App.—San Antonio 1988, writ denied). Similarly, in *Miller v. Miller*, the court found that the burden shifted to the fiduciary to establish fairness in challenged transaction only *after* the court found the existence of a fiduciary relationship. 700 S.W.2d 941, 945–46 (Tex. App.—Dallas 1985, writ ref. n.r.e.); *see Cole v. Plummer*, 559 S.W.2d 87, 89 (Tex. App.—Eastland 1977, writ ref. n.r.e.) ("After it is determined the relationship of attorney and client exists, the attorney has the burden of presenting evidence and securing a finding the confidential relationship was not breached."). Accordingly, we conclude that Williams has not shown, nor can we find, any authority to support his contention that the fiduciary in an attorney-client relationship bears the burden of proof to show the existence of a fiduciary relationship. We overrule this issue.

### Whether there is evidence that Gottfried owed a fiduciary duty to Blackland during the course of the Austin 4 Square Litigation

Williams claims Gottfried breached his fiduciary duty to Blackland by advising Miller not to reimburse Blackland for the $77,000 in attorney's fees and expenses that Blackland paid for the Austin 4 Square Litigation.

Fiduciary relationships arise as a matter of law in certain formal relationships, including the attorney-client relationship. To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove: (1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant; (3) causation; and (4) damages to the plaintiff. *See Beck*, 284 S.W.3d at 429. In the context of an attorney-client relationship, a breach of fiduciary duty most often involves the attorney's "failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client

7

confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations." *Id.* Gottfried argues on appeal that Williams's breach-of-fiduciary-duty claim fails from the start because no fiduciary relationship ever existed among Gottfried and Blackland, because no attorney-client relationship existed between them during the course of the Austin 4 Square Litigation. *See Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi–Edinburg 1994, no writ) (providing there must first be attorney-client relationship before fiduciary duty arises). Accordingly, we start with an analysis of the first element.

The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client. *In re Baytown Nissan Inc.*, 451 S.W.3d 140, 145–46 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *Bright v. Addison*, 171 S.W.3d 588, 596 (Tex. App.—Dallas 2005, pet. denied). The relationship may be expressly created through a contract or it may be implied from the actions of the parties. *See Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 43 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Bright*, 171 S.W.3d at 596. In order for the contractual relationship to exist, the parties must explicitly or implicitly manifest an intention to create an attorney-client relationship. *See Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). The determination of whether an attorney-client relationship can be implied is based on an objective standard, and the court is required to examine what the parties said and did rather than their subjective beliefs. *See Span Enters. v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Bright*, 171 S.W.3d at 596. A court cannot consider a client's or attorney's unspoken subjective beliefs about the relationship. *In re Baytown Nissan Inc.*, 451 S.W.3d at 146. A law firm does not have an attorney-client relationship if the purported client

8

neither sought nor obtained legal services from the law firm. *See Green's Pressure Treating & Rentals, Inc.,* 178 S.W.3d at 43–44. On this record, we can find no evidence of an express relationship; accordingly, the issue then is whether there is evidence of an implied attorney-client relationship.

Williams's evidence in response to Gottfried's no-evidence motion for summary judgment included an affidavit of Skyler Williams and a declaration of expert William Van Fleet. Van Fleet opined that an implied attorney-client relationship was formed between Blackland and Gottfried in the Austin 4 Square Litigation. He based his opinion on the following facts: Williams's assertion that Gottfried stated Blackland would incidentally benefit from the Austin 4 Square Litigation[4], Gottfried's retainer for the first meeting being paid from the Blackland American Express credit card, the alleged agreement between Williams and Miller that the payment to Gottfried would be repaid to Blackland, and that "many" phone calls were made regarding that litigation between Blackland and Gottfried in his law office.

In reviewing this evidence, we must disregard evidence of the parties' subjective beliefs and instead look at the objective evidence. *Span*, 274 S.W.3d at 858 (providing that determining whether contract can be implied requires using objective standard, looking at what parties said and did, and not their unstated, subjective beliefs). Here, it is undisputed that Blackland was not a named party in the Austin 4 Square Litigation. There is no evidence in the record to suggest that Williams, individually and as a director of Blackland, was unaware that the Austin 4 Square Litigation was brought in Miller's personal, individual capacity and not as a

---

[4] According to Williams's affidavit, Gottfried advised Blackland "that the success of Mr. Miller's personal lawsuit against his mother's company would benefit [Blackland], because [Blackland] would pick up their customers."

9

director of Blackland. Indeed, Williams's own affidavit states that Williams was aware that the company funds were being used to fund Miller's *personal* legal suit. And Williams does not cite to, nor can we find, any authority to suggest that an attorney-client relationship may be implied based on a putative client's incidental benefit to the legal services rendered—in this case, the Austin 4 Square Litigation.

In addition, while Williams agreed that Blackland would fund Miller's litigation, he claims that any repayment of corporate funds was solely the responsibility of Miller. However, the record shows that this was allegedly an agreement between Williams and Miller alone; there is no evidence to show that Gottfried was aware of any repayment agreement between Miller and Blackland prior to the 2016 lawsuit against Williams. Gottfried had no control over how he was paid for his services nor who paid for those services. *See Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990) (providing that payment of fees is not dispositive of existence of attorney-client relationship).

Even viewing the evidence in a light most favorable to Williams, *see Emmett*, 459 S.W.3d at 589, we cannot conclude that Williams's affidavit and Van Fleet's expert opinion that Blackland and Gottfried formed an "implied attorney-client relationship" through the Austin 4 Square Litigation produced more than a scintilla of evidence on this element. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing Tex. R. Civ. P. 166a(c) & (f)) (providing that affidavits containing unsubstantiated factual or legal conclusions or subjective beliefs that are not supported by evidence are not competent summary-judgment proof because they are not credible or susceptible to being readily controverted); *see also Kiger v. Balestri*, 376 S.W.3d 287 at 291 (holding that evidence of putative client's subjective belief that attorney-client relationship existed was insufficient to create fact issue where putative client failed to set

10

forth evidence regarding specific terms of representation agreement, what services attorney provided, what fees he charged, duration of agreement or when it was formed); *see also Dillard v. Broyles*, 633 S.W.2d 636, 643 (Tex. App.—Corpus Christi–Edinburg 1982, writ ref'd n.r.e.) (where there was no evidence to suggest attorney was aware of putative clients' assumption of attorney-client relationship, attorney had no affirmative duty to deny that he was their attorney); *see Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (providing that, whether agreement is express or implied, there must be evidence *both* parties intended to create attorney-client relationship—one party's subjective belief is insufficient to raise question of fact to defeat summary judgment). Accordingly, on this record, we cannot conclude that an implied attorney-client relationship existed between Gottfried and Blackland during the course of the Austin 4 Square Litigation. Because there was no attorney-client relationship, Gottfried did not owe a fiduciary duty to Blackland in the Austin 4 Square Litigation. *See Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se., Inc.*, 326 S.W.3d 352, 357–58 (Tex. App.—Houston [1st Dist.] 2010, no pet.) We overrule this issue.

***Whether there is evidence that Gottfried, in representing Blackland in the course of the Williams Litigation, breached his fiduciary duty owed to Blackland***

In his second issue, Williams argues that Gottfried breached his fiduciary duty to Blackland by undertaking representation without the authority of the Board, that Gottfried failed to advise Blackland of a conflict of interest, and that Gottfried advised Miller to set up a competing business in his wife's name.

Unlike the Austin 4 Square Litigation, Gottfried does not dispute the existence of an attorney-client relationship between his firm and Blackland in the Williams Litigation. The undisputed evidence shows that, as president of Blackland, Miller retained Gottfried in April 2016

11

to represent himself and Blackland in a suit brought against Williams in Williams's individual capacity.

While failing to advise of a conflict of interest may constitute a breach in certain circumstances, *see Beck*, 284 S.W.3d at 429, we conclude that Williams's evidence has not created a fact issue as to why a conflict of interest would exist between Gottfried and Blackland in the first place; since we determined there was no evidence of an attorney-client relationship between Blackland and Gottfried in the Austin 4 Square Litigation,—and consequently no fiduciary duty— Gottfried was not required to advise the board of a conflict of interest because none existed.

However, even assuming there was such a relationship, we conclude that Williams's summary judgment evidence would still be insufficient to create a fact issue on this claim. Van Fleet's declaration opines that Gottfried breached his fiduciary duty owed to Blackland by bringing the Williams Litigation on Blackland's behalf without first advising Blackland's board of directors of a conflict of interest. Van Fleet's declaration provides that "Gottfried and The Gottfried Firm breached their fiduciary duties owed to Blackland Construction, Inc. by accepting and continuing representation of James G. Miller, Jr., individually and [sic] Blackland Construction Inc. of a conflict of interest in representing both in a suit to be filed against Skyler Williams . . . and in not declining the representation without a waiver and consent by Blackland . . ." In support, the declaration cites to Rules 1.06 and 1.12 of the Texas Disciplinary Rules of Professional Conduct. Despite citing the disciplinary rules, however, the declaration does not describe any facts that would explain how Gottfried's alleged actions or inactions violated either of these rules. Even if it had, a violation of a disciplinary rule is not a presumption that a lawyer has breached his or her fiduciary duties owed to a client. *See* Tex. Disciplinary R. Prof'l Conduct preamble ¶ 15 ("Violation of a rule does not give rise to a private cause of action nor does

12

it create any presumption that a legal duty to a client has been breached."). Thus, we conclude that this declaration is insufficient to create a fact issue on Williams's breach-of-fiduciary-duty claim. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (providing that, to be competent summary-judgment evidence, affidavit must contain specific factual bases, admissible in evidence, upon which its conclusions are based); *see also* Tex. R. Civ. P. 166a(f) ("An affidavit that makes self-serving, conclusory statements without any underlying factual detail cannot support summary judgment."). Accordingly, we conclude that Williams failed to produce more than a scintilla of evidence on this challenged element of his breach-of-fiduciary-duty claim. *See Emmett*, 459 S.W.3d 578 at 589. For the same reasons, Williams's evidence has not created a fact issue on whether Gottfried breached his fiduciary duty in failing to return the $80,000 in attorney's fees.[5] We overrule Williams's second issue.

***Whether the order granting the no-evidence motion for summary judgment granted more relief than was requested***

In his third issue, Williams argues that the trial court's order granting summary judgment provided more relief than requested because Gottfried's no-evidence motion only attacked the breach-of-fiduciary claim, leaving out the claim for equitable fee forfeiture and the statutory claim for return of monies under Section 82.063 of the Government Code. Because the order granting summary judgment dismissed the entire case based on grounds not presented in the motion, Williams argues, the trial court committed reversible error. *See G & H Towing Co.*

---

[5] Williams also argues that, in February 2015, Gottfried advised Miller "to set up a competing firm in the name of his wife to acquire the customers of Blackland Construction Inc. and did not advise Blackland Construction Inc. that Mr. Miller was doing this through his wife." Because Williams can point to no evidence in the record of this contention other than his self-serving affidavit, we overrule Williams's issue on this ground.

*v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam) (stating that summary judgment ruling that grants more relief than requested is erroneous but final and appealable).

Williams argues on appeal that he brought three different causes of action in the trial court: (1) breach of fiduciary duty, (2) statutory motion for return of attorney's fees, and (3) equitable fee forfeiture. However, Williams points us to no authority that equitable fee forfeiture is an independent cause of action. *See Burrow v. Arce,* 997 S.W.2d 229, 244 (Tex. 1999) (providing that equitable fee forfeiture is remedy, not separate claim). This leaves just the breach-of-fiduciary-duty claim and the statutory motion for return of attorney's fees. Regarding the motion for return of attorney's fees under Section 82.063 of the Government Code, the statute provides:

> (a) A person may bring an action against the person's attorney if the attorney receives or collects money for the person and refuses to pay the money to the person on demand.
>
> (b) To recover under this section the person must file a motion with a district court in either the county in which the attorney usually resides or the county in which the attorney resided when the attorney collected or received the money.
>
> (c) Notice of the motion and a copy of the motion shall be served on the attorney not later than the fifth day before the trial.
>
> (d) If the motion is sustained, judgment shall be rendered against the defendant for the amount collected or received and at least 10 percent but not more than 20 percent damages on the principal sum.

Williams asserted this claim in his first amended petition, asserting that Gottfried should repay Williams (on behalf of Blackland) the $77,000 in attorney's fees that Williams paid from the company American Express credit card for the 4 Square Litigation. It is undisputed that Gottfried did not address this claim in his no-evidence motion for summary judgment despite it

14

being a claim in the live pleadings. Unlike the equitable fee forfeiture remedy, however, we find no authority to suggest that Section 82.063 is not an independent cause of action. Because Gottfried's no-evidence motion did not address this claim, the trial court granted more relief than was requested and erred in dismissing Williams's suit its entirety. *See Magee*, 347 S.W.3d at 298. The Section 82.063 claim should thus be remanded to the trial court for further proceedings. We sustain Williams's third issue.

### *Whether the no-evidence motion was filed prematurely*

In his fourth issue, Williams argues that Gottfried's no-evidence motion for summary judgment was filed prematurely because Williams did not have adequate time for discovery, rendering the motion improper under Rule 166a(i). *See* Tex. R. Civ. P. 166a(i) ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."). "We review a trial court's determination that there has been an adequate time for discovery on a case-by-case basis, under an abuse of discretion standard." *McInnis v. Mallia,* 261 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). Williams filed suit in February 2020, and Gottfried filed the no-evidence motion for summary judgment in February 2022. Williams had two years to engage in discovery; in fact, it is undisputed that the parties did so. Accordingly, we conclude that Williams had adequate time for discovery, that

15

Gottfried's motion was not "premature," and that the trial court did not abuse its discretion in hearing and ruling on Gottfried's no-evidence motion for summary judgment when it did. [6] *See Restaurant Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 229–41 (Tex. App.—Dallas 2002, no pet.) (holding there was adequate time for discovery where case had been on file seven months and motion had been on file 26 days before motion was granted); *see also McClure v. Attebury*, 20 S.W.3d 722, 730 (Tex. App.—Amarillo 1999, no pet.) (concluding there was adequate time for discovery where motion was filed seven months after suit was filed and hearing was held nine months after suit was filed). We overrule Williams's fourth issue.

## CONCLUSION

For the foregoing reasons, we affirm the portion of the trial court's order granting Gottfried's no-evidence motion for summary judgment on Williams's breach-of-fiduciary-duty claims and reverse and remand the claim for return of attorney's fees under Texas Government Code Section 82.063 for further proceedings consistent with this opinion.

---

[6] Williams argues that he filed a motion for continuance. However, to support this claim, he appears to reference two sentences in his response and objections to the no-evidence motion for summary judgment which states: "Simply put, this Court should continue this hearing until all written discovery is accomplished and appropriate depositions taken. There has not been adequate time for discovery in this case." Because we have determined that there was adequate time for discovery in this case, we need not determine whether these statements constitute a verified motion for continuance under Rule 251. *See* Tex. R. Civ. P. 251.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed:   April 24, 2024